IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASMON STALLINGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 2202 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ) | |
| RALPH BURKYBILE, RUSSELL ) | |
| BAKER, TROY MAYES, SERGEANT ) | |
| SMITH, MICHAEL EVANS, SAUL ) | |
| PULIDO, DARREN DAVENPORT, ) | |
| FRED BEAUGUARD, and SALEH ) | |
| OBAISI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eighth Amendment rights. Defendants have filed Federal Rule of Civil Procedure ("Rule") 56 motions for summary judgment. For the reasons set forth below, the Court grants Saleh Obaisi's motion and denies the motion of Ralph Burkybile, Russell Baker, Troy Mayes, Sergeant Smith, Michael Evans, Saul Pulido, Darren Davenport, and Fred Beauguard ("officers").[1]

### Facts

Plaintiff is incarcerated at Stateville Correctional Center, and defendants are employed there. (Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶¶ 1-9; Pl.'s Resp. Obaisi's LR 56.1(a) Stmt. ¶ 2.) Stateville inmates are required to pair up in line before they are escorted to the cafeteria. (Pl.'s Resp. Officers'

---

[1]The officers' reply brief in support of their motion was due on February 22, 2016. Because they did not file the brief or a motion for an extension of time by that date, the Court addresses their motion without it.

LR 56.1(a) Stmt. ¶ 12.) On October 3, 2012, when plaintiff's gallery was preparing to go to the cafeteria, plaintiff did not pair up with another inmate. (*Id.* ¶¶ 11, 13.) As a result, he was sent to the bullpen to be returned to his cell. (*Id.* ¶ 13.)

As inmates returned from the cafeteria, they were held in the bullpen by defendant Burkybile before being released to their galleries. (*Id.* ¶ 15.) Burkybile directed inmates from a particular gallery to step forward in the bullpen and then opened the bullpen to allow those inmates to return to their cells. (*Id.*) When Burkybile instructed inmates in plaintiff's gallery to step forward, plaintiff did not do so and refused to leave the bullpen. (*Id.* ¶ 16.) Accordingly, Burkybile went into the bullpen and told plaintiff to cuff up, *i.e.*, to turn around and put his hands behind his back. (*Id.* ¶¶ 17-18.) Plaintiff refused to cuff up, and Burkybile left the bullpen. (*Id.* ¶ 19.)

Burkybile returned and entered the bullpen with defendants Baker, Mayes, Evans, Pulido, Davenport, and Beauguard. (Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 60-61.) Plaintiff says all of these officers "ran in[to] [the bullpen], "wrestled [him] to the ground" and "thr[ew] [him] everywhere," defendant Baker grabbed him by the hair and "rammed [his] head against the ground" at least three times, defendant Pulido jumped on his back, and "a lot of them . . . kicked [him]." (*Id.* at 61-68, 100; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 11-12, 16-19, 23.) The officers then lifted plaintiff up and dragged him out of the bullpen, with Evans knocking plaintiff's head on the door on the way out. (Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 69; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 24-25.) As the officers took plaintiff out of the bullpen, Mayes, Pulido, and Davenport pushed plaintiff's head towards his knees, Evans pushed up on plaintiff's shoulder, Baker held plaintiff's hair, and Burkybile helped drag plaintiff along. (*Id.* at 69-70; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 26.) The officers continued to drag plaintiff in this manner, though he "yelled out in pain and said that he would walk on his own." (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 27.)

2

Later that day, plaintiff was seen by defendant Obaisi in the health care unit. (Pl.'s Resp. Obaisi's LR 56.1(a) Stmt. ¶ 12.) Plaintiff told Obaisi his head, neck, right shoulder, and left hand hurt. (Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 135-36.) Obaisi concluded that plaintiff had a sprained shoulder, neck, and hand, ordered that each be x-rayed, and prescribed Motrin for plaintiff for two weeks. (Pl.'s Resp. Obaisi's LR 56.1(a) ¶¶ 32, 36-37, 44.)[2]

The x-rays, which were scheduled and cancelled because of security lock downs four times between October 10 and 18, 2012, were taken on October 22, 2012. (Obaisi's LR 56.1(a) Stmt. ¶ 38.)[3] They were "interpreted as negative." (*Id.*, Ex. C, Obaisi Aff. ¶ 23.) "The negative x-rays ruled out the possibility of . . . fracture, separation, or dislocation in those areas." (*Id.*)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d

---

[2]Plaintiff denies some of the facts asserted in paragraph 32, but not those recited here.

[3]Plaintiff objects to the facts asserted in this paragraph as hearsay because they are drawn from written medical records. Because, however, these facts are admissible in substance–that is, the author of the notes could testify about why the x-rays were cancelled–the fact that they are inadmissible in form does not preclude them from consideration on summary judgment. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) (stating that summary judgment evidence "must be admissible in *content*, in the sense that a change in form but not in content, . . . would make the evidence admissible at trial").

3

687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, plaintiff alleges that the officers violated his Eighth Amendment rights by using excessive force against him. To defeat their motion on this claim, plaintiff must offer evidence that suggests they used force against him not "'in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992) (citation omitted)). Among the factors relevant to the excessive force determination are "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *Id.* (quotation and citation omitted).

Viewed favorably to plaintiff, the record suggests that all of the officers except Smith beat plaintiff while he was lying prone on the ground of the bullpen, dragged him out of the bullpen in a position that caused him to yell out in pain, and continued to do so even after he said he would walk. (Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 60-70, 100; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 11-12, 16-19, 23, 26-27.) It also suggests that Smith witnessed these events, which the record shows left plaintiff with a sprained neck, shoulder, and hand, and did nothing to stop them. (*See* Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 61, 69.) In short, there is a triable issue of fact as to whether the officers used excessive force on plaintiff or failed to intervene to prevent the use of such force. Accordingly, the Court denies their motion for summary judgment.

In Count II, plaintiff alleges that Obaisi violated his Eighth Amendment rights by acting with deliberate indifference to his medical needs. To defeat Obaisi's motion on this claim, plaintiff must offer evidence that suggests he suffered from an objectively serious medical condition – "one that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention" – and that Obaisi knew of and disregarded the substantial risk of harm that lack of treatment posed to plaintiff. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Even if plaintiff had a serious medical condition, an issue the Court does not decide, there is no evidence to suggest that Obaisi was deliberately indifferent to it. On the contrary, it is undisputed that Obaisi responded to plaintiff's complaints of shoulder, neck, and hand pain by ordering x-rays of those areas, which were negative, and prescribing Motrin for plaintiff. (Officers' LR 56.1(a) Stmt., Ex. A, Pl.'s Dep. at 135-36; Pl.'s Resp. Obaisi's LR 56.1(a) Stmt. ¶¶ 32, 36-38, 44; *id.*, Ex. C, Obaisi Aff. ¶ 23.) Further, though plaintiff says that, after the altercation, he wrote letters to Obaisi requesting medical treatment, there is no evidence that Obaisi ever received them. Thus, plaintiff has not created a triable issue of fact as to whether Obaisi was deliberately indifferent to his serious medical need.

## Conclusion

For the reasons set forth above, the Court grants Saleh Obaisi's motion for summary judgment [115] and denies the motion of Ralph Burkybile, Russell Baker, Troy Mayes, Sergeant Smith, Michael Evans, Saul Pulido, Darren Davenport, and Fred Beauguard [118]. This case is set for a status hearing on March 8, 2016 at 9:30 a.m.

**SO ORDERED.**  **ENTERED: February 29, 2016**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**